IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-20883

ERICA TORRES,

    Plaintiff,

vs.

WHETSTONE MANAGEMENT LLC,
a Foreign Limited Liability Company,

    Defendant.

_____/

## COMPLAINT

Plaintiff, ERICA TORRES, sues Defendant, WHETSTONE MANAGEMENT LLC, and shows:

### Nature of Claim

1. This is a proceeding for declaratory relief and monetary damages to redress the deprivation of rights secured to Plaintiff by the Civil Rights Act of 1964, as amended in 1972, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Florida Civil Rights Act, §§ 760.01, *et seq.*, Fla. Stat. (2016) ("FCRA").

### Jurisdiction & Venue

2. The jurisdiction of this court is founded on federal question jurisdiction, 28 U.S.C. § 1331, as conferred by 42 U.S.C. § 2000e-5(f)(3).

3. This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practices were committed in this judicial district at Defendant's, WHETSTONE MANAGEMENT LLC's ("WHETSTONE"), principal place of business in Miami-Dade County, Florida.

1

5. At all material times, Plaintiff was protected by Title VII and the FCRA because she is a female and she was discriminated against based on her sex. She was at all material times an "employee" as contemplated by Title VII and the FCRA.

6. At all material times, Defendant was Plaintiff's "employer" as contemplated by Title VII and the FCRA.

## Satisfaction of Conditions Precedent

7. Plaintiff, on or about January 29, 2021, filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which assigned it the Case Number 510-2021-02229, which filing also perfected Plaintiff's rights under the Florida Civil Rights Act.

8. The EEOC issued a Notice of Right to Sue dated February 2, 2021. Plaintiff has filed this action within 90 days of receipt of the Notice of Right to Sue.

9. All other conditions precedent to the filing of this action have been performed or waived.

## General Allegations

10. On February 2, 2015, Plaintiff began working for WHETSTONE as a Compliance Manager.

11. Almost immediately upon her hire, she began experiencing sexual harassment and discrimination from her immediate supervisor, Tracey Parks, a married man who is also co-owner of WHETSTONE.

12. In 2018, Mr. Parks became increasingly aggressive with Plaintiff, likely due to his rumored relationship with another employee crumbling.

13. Mr. Parks advances were sexual in nature and unwanted by Plaintiff. These unwanted advances included both oral and written comments, many of which were sent to Plaintiff's cell phone via text message.

14. Mr. Parks sent Plaintiff many inappropriate text messages, including

    a. A "[f]riendly hug with you will result in my dick getting hard in the middle of the floor. I love the way you look and it will happen. I have had it happen sitting in my office with you";

    b. "I want those tits in my mouth";

    c. "I am so horny for you"; and

    d. "My dick is hard for you".

15. Mr. Parks often used the term "crossing the line" to mean that Plaintiff would eventually have to sleep with him. Mr. Parks sent text messages to Plaintiff such as:

    a. "I need you to cross the line";

    b. "I cannot believe that you are not crossing the line. I need your nipples in my mouth. I want to caress you neck and lick you for hours"; and

    c. "No wonder you cannot cross the line. You are a church lady. I am not even close to getting off. My baby is not touching me."

16. These text messages were unwanted by Plaintiff and she often had to do her best to deflect Mr. Parks' advances while also protecting her employment at WHETSTONE. If Mr. Parks did not receive the attention he was hoping for from Plaintiff, he would retaliate against her at work by making her job more difficult, including, but not limited to, refusing to communicate with her despite him being her direct supervisor.

17. In December of 2018, Mr. Parks sent text messages to Plaintiff stating that she needed to "get under the desk" in an obvious reference to performing oral sex on Mr. Parks. In a reference to Plaintiff volunteering at a children's toy drive, Mr. Parks texted her that "[i]t is funny because my baby helps everyone. Poor me I have to wait." He goes on to state "I still do not have boobs in my mouth or you under my desk. This is taking forever to see those boobs."

18. On December 28, 2018, Plaintiff suffered one of the most humiliating sequences of her career. Plaintiff was meeting with one of her subordinates and happened to be eating a lollipop.

3

Mr. Parks interrupted the meeting and, in front of the subordinate, made a comment to Plaintiff about how well she was sucking on the lollipop. Mr. Parks then asked if Plaintiff was sure she didn't want to "blow" him.

19. That humiliating event led to Plaintiff sending Mr. Parks a text message stating, among other things "You got mad because I said I didn't change my mind about sucking your dick. So you don't want to be around me. Fine. Be that way. Find someone who wants to. You are only thinking of yourself and forgot I have feelings too."

20. Due to Plaintiff standing up to Mr. Parks and refusing to perform sexual acts on him, Mr. Parks did not speak to Plaintiff for over two months. This made her job much more difficult. This was the kind of retaliation that Plaintiff would suffer at her job whenever Mr. Parks felt like Plaintiff was not responding favorably to his advances.

21. In an attempt to mend their professional relationship, Plaintiff wished Mr. Parks a happy birthday in March of 2019. It did not take Mr. Parks long to begin his inappropriate advances again. Mr. Parks made comments via text message such as:

    a. "Wow you look good. The dress is showing the stuff so well. I almost saw your nipples.";

    b. "You look so good today. Thank you. I appreciate when you are hot. I love looking at you.";

    c. "I need those boobs in my mouth.";

    d. "No smiling today unless your boobs are in my mouth.";

    e. "I hope you have the top that works for your boobs to be in my mouth. That would be so perfect."; and

    f. "I was thinking of letting you ride my face and I could cross the line."

22. At all times, Mr. Parks' pressuring of Plaintiff was constant, unrelenting, and completely unwanted by Plaintiff.

23. Unfortunately, with increasing pressure from Mr. Parks, who again was her *direct supervisor*, to perform sexual acts on him, Plaintiff finally acquiesced in May of 2019 at a conference in New York. Plaintiff did this because she felt harassed, intimidated, and otherwise threatened by Plaintiff and felt she had no choice in order to save her job, a job which she otherwise enjoyed but for the interaction with Mr. Parks.

24. Plaintiff's acquiescence to a physical relationship with Mr. Parks continued sporadically for approximately nine months. During such time, Mr. Parks would make Plaintiff's job difficult by refusing to communicate with her unless she was performing sexual acts for him. Mr. Parks went so far as to inform Plaintiff that "[w]e will not be talking tomorrow till you handle it. Sorry but that is the way it is and I need to be happy after what you did this weekend". Mr. Parks' reference to "tomorrow" indicated a Monday workday, and his reference to "handle it" related to gratifying his sexual requests.

25. Mr. Parks' predatory, harassing, and retaliatory behavior came to a boiling point in late February of 2020, when he accused Plaintiff of flirting with another man during Plaintiff's salsa dance classes.

26. Due to this belief, Mr. Parks informed Plaintiff via text message that "[w]e should talk about you and your position". This is a clear reference to Plaintiff's employment with WHETSTONE and Mr. Parks' intention to retaliate against Plaintiff for allegedly flirting with another man.

27. Mr. Parks, in the same conversation, informed Plaintiff that he was going to cancel her attendance at a work conference, thus depriving her of a term or condition of employment due to her gender.

28. Mr. Parks went on to state that he was close to killing Plaintiff because of the incident and referred to himself as "a killer".

29. In September of 2020, through the undersigned, Plaintiff informed WHETSTONE of her claims of sexual harassment, discrimination, and retaliation. As a direct and proximate result, Plaintiff was terminated in December of 2020 in clear retaliation of her complaints.

30. WHETSTONE took the retaliation one step further and, on December 7, 2020, filed frivolous lawsuits in Miami-Dade County Circuit Court in a further attempt to intimidate and harass Plaintiff.[1]

### Count I – Title VII – Sex Discrimination

31. Plaintiff realleges and incorporates the matters set forth in paragraphs 1 through 30 as if fully set forth in Count I.

32. Defendant has intentionally discriminated against Plaintiff on account of her sex in violation of Title VII by denying to her equal terms and conditions of employment through subjecting her to sexual harassment, discrimination, retaliation, and termination.

33. Defendant's treatment of Plaintiff, including its termination of her, was motivated by Plaintiff's sex, and thus violated Plaintiff's rights under the Title VII.

34. The actions of the Defendant affected Plaintiff in the "compensation, terms, conditions and privileges of employment" as envisioned by Title VII.

35. As a direct, natural, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost wages and benefits in the past and such losses will continue into the future; she has suffered emotional distress, inconvenience, embarrassment and other non-pecuniary damages and such damages will continue into the future.

36. The sexual harassment, retaliation, and termination that Plaintiff has suffered violates her federal statutory right to be free from such harassment and constitutes irreparable harm for which there is no adequate remedy at law.

---

[1] See Whetstone Holdings LLC vs Erica Torres, 2020-026192-CA-01, Miami-Dade County Circuit Court and Tracy Parks vs. Erica Torres, 2020-026190-CA-01, Miami-Dade County Circuit Court.

37. Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to Title VII.

WHEREFORE, Plaintiff, ERICA TORRES, prays that this Court will:

a. Issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of her rights under Title VII;

b. Make Plaintiff whole through back pay, benefits, and front pay;

c. Grant Plaintiff judgment against Defendant for damages for the violations of Title VII;

d. Grant Plaintiff her reasonable attorney's fees and litigation expenses against Defendant;

e. Grant damages for pain and suffering;

f. Grant punitive damages; and

g. Provide such other and further relief as is just.

### Count II – FCRA – Sex Discrimination

38. Plaintiff realleges and incorporates the matters set forth in paragraphs 1 through 30 as if fully set forth in Count II.

39. Defendant has intentionally discriminated against Plaintiff on account of her sex in violation of FCRA, §§ 760.01, *et seq*, Fla. Stat. (2016) by denying to her equal terms and conditions of employment through subjecting her to sexual harassment, discrimination, retaliation, and termination.

40. Defendant's treatment of Plaintiff, including its termination of her, was motivated by Plaintiff's sex, and thus violated Plaintiff's rights under the FCRA.

41. The actions of the Defendant affected Plaintiff in the "compensation, terms, conditions and privileges of employment" as envisioned by the FCRA.

42. As a direct, natural, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost wages and benefits in the past and such losses will continue into the future; she has suffered emotional distress, inconvenience, embarrassment and other non-pecuniary damages and such damages will continue into the future.

43. The sexual harassment, retaliation, and termination that Plaintiff has suffered violates her Florida statutory right to be free from such harassment and constitutes irreparable harm for which there is no adequate remedy at law.

44. Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to § 760.11(5), Fla. Stat. (2016).

WHEREFORE, Plaintiff, ERICA TORRES, prays that this Court will:

   a. Issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of her rights under the FCRA;

   b. Make Plaintiff whole through back pay, benefits, and front pay;

   c. Grant Plaintiff judgment against Defendant for damages for the violations of the FCRA;

   d. Grant Plaintiff her reasonable attorney's fees and litigation expenses against Defendant;

   e. Grant damages for pain and suffering;

   f. Grant punitive damages; and

   g. Provide such other and further relief as is just.

## Demand for Jury Trial

Plaintiff, ERICA TORRES, demands trial by jury on all issues so triable.

Dated: **March 4, 2021**
Fort Lauderdale, Florida

                        Respectfully submitted by:

                        James A. Peterson, Esq.
                        PETERSON LEGAL P.A.
                        401 East Las Olas Boulevard
                        Suite 130-550
                        Fort Lauderdale, Florida 33301
                        (754) 444-8076
                        James@PetersonLegal.com


                        By: /s/ *James A. Peterson*
                        James A. Peterson, Esq.
                        Florida Bar No. 645621